IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

*In re the Marriage of:*

ANNAMARIE FEMIANO, *Petitioner/Appellant*,

*v.*

DOUGLAS G. MAUST, *Respondent/Appellee*.

No. 1 CA-CV 18-0582 FC

FILED 4-23-2020

Appeal from the Superior Court in Maricopa County
No. FN2016-053412
The Honorable Adam Driggs, Judge

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

COUNSEL

Rose & Associates, PLLC, Phoenix
By Timothy J. Rose
*Counsel for Petitioner/Appellant*

Hall Underwood, PLLC, Scottsdale
By Jay J. Hall, Emi Koyama

Novo Law Firm, Chandler
By Caitlin L. Andrade
*Co-Counsel for Respondent/Appellee*

---

## OPINION

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

---

**C A T T A N I**, Judge:

¶1        AnnaMarie Femiano ("Wife") appeals from the dissolution decree dissolving her marriage to Douglas G. Maust ("Husband"). At issue is the marital community's equitable interest in a home purchased during the marriage with community funds but titled in Husband's name only. For reasons that follow, we affirm the superior court's determination that, based on a disclaimer deed signed by Wife, the home was Husband's separate property. We reverse, however, the court's reliance on the formula described in *Drahos v. Rens*, 149 Ariz. 248 (App. 1985), in calculating the community lien for capital contributions to the property. The *Drahos* formula credits the community for contributions to the loan principal and improvements to the property and a portion of the home's appreciation in value during the marriage. But that formula was crafted in a context of a separate property residence on which both separate and community funds were expended. We conclude that this case is distinguishable and hold that if the community pays all costs associated with purchasing and improving a separate property residence acquired during marriage—with no separate capital contributions—and the property appreciates in value, any increase in equity is fully attributable to community contributions, and the community is thus entitled to an equitable lien for the full increase in equity.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Husband and Wife married in late 2005. During the marriage, Husband worked as an electrician earning over $100,000 annually; Wife worked part time as a cosmetologist earning around $10,000 per year.

¶3        In 2015, the couple paid $235,000 for a house that would be their marital home for the remainder of their marriage. Because of issues with Wife's credit, Husband obtained a home loan in his name only and took title to the house as his sole and separate property; at the time of closing, Wife executed a disclaimer deed to that effect. Separate title notwithstanding, the down payment and all payments on the loan were made with community funds.

¶4          In December 2016, Wife filed a dissolution petition seeking property division and an award of spousal maintenance. The superior court issued a preliminary injunction prohibiting the sale of community property, and in mid-2017, the court entered temporary orders awarding Wife $500 per month in temporary spousal maintenance. Later that year, Husband sold the marital home for $284,999.

¶5          In April 2018, the superior court held a dissolution trial at which Wife and Husband testified. Over Husband's objection, the court permitted Wife to testify regarding her contention that the disclaimer deed had been procured by fraud and that the marital home should thus be classified as community property.

¶6          In the June 2018 dissolution decree, the superior court implicitly rejected Wife's fraud claim, classifying the marital home as Husband's separate property, while imposing an equitable lien for payments the community made toward the principal owed on the home loan. Additionally, the court applied the *Drahos* formula and thus credited the community with a portion of the increased value in the property, with the result being a community lien for $16,095.78, with Wife entitled to $8,047.89. The court also awarded Wife spousal maintenance of $500 per month for one year. The court denied both parties' requests for attorney's fees and costs.

¶7          Wife filed a motion for new trial, which the superior court denied. The superior court entered judgment awarding Husband $1,750 in attorney's fees associated with the post-decree proceedings, and Wife filed a notice of appeal challenging the dissolution decree. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.     Marital Home.

¶8          Wife argues that the superior court erred by classifying the home as Husband's separate property and by calculating an inadequate community lien.

### A.     Classification.

¶9          We review de novo the legal question of whether property should be classified as community or separate. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We consider the evidence in the light most favorable to upholding the decree, giving deference to the

superior court's assessment of witness credibility. *Id.* at 522 n.1; *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

¶10        Property acquired during marriage is presumed to be community property. A.R.S. § 25-211(A); *Brebaugh v. Deane*, 211 Ariz. 95, 97–98, ¶ 6 (App. 2005). The spouse seeking to rebut that presumption must prove by clear and convincing evidence that the property is separate. *Brebaugh*, 211 Ariz. at 98, ¶ 6. A signed disclaimer deed, however, provides such proof and, absent fraud or mistake, rebuts the community presumption. *Bell-Kilbourn*, 216 Ariz. at 524, ¶¶ 10–11. The party attempting to nullify the effect of a disclaimer deed has the burden to show by clear and convincing evidence that the deed was the result of fraud or mistake. *Powers v. Guaranty RV, Inc.*, 229 Ariz. 555, 562, ¶ 27 (App. 2012).

¶11        Here, the marital home was purchased during the marriage and as such was presumed to be community property. *See* A.R.S. § 25-211(A). But Husband met his burden to rebut the community-property presumption and proved that the home was his separate property by providing clear and convincing evidence to that effect: the disclaimer deed signed by Wife. *See Bell-Kilbourn*, 216 Ariz. at 524, ¶ 11. At trial, Wife challenged the validity of the disclaimer deed, arguing that it was the result of fraud. The superior court implicitly rejected Wife's claim, concluding that the marital home was Husband's separate property.

¶12        Wife faults the superior court for not making an express finding on her fraud allegation. Although an explicit finding on this type of allegation is preferable, the superior court generally need not expressly state findings of fact or conclusions of law unless a party asks it to do so, and here, Wife made no such request. *See* Ariz. R. Fam. Law P. 82(a)(1) (requiring the court to make express findings of fact and conclusions of law "[i]f requested before trial"); *Bender v. Bender*, 123 Ariz. 90, 92 (App. 1979). Under these circumstances, we assume that the court "found every controverted fact necessary to sustain the judgment," and we will uphold such an implicit finding if supported by the record. *Bender*, 123 Ariz. at 92. Here, the court's ultimate ruling classifying the marital home as Husband's separate property necessarily implies that Wife failed to prove fraud.

¶13        Wife further argues that her testimony established all the elements of fraud and that the court thus erred by crediting the disclaimer deed. Wife testified that she signed the disclaimer deed in reliance on Husband's promise to put her name on the title anyway and that she would not have signed the deed had she known doing so gave up her rights to the home. Husband testified to the contrary that he believed Wife understood

the import and impact of the disclaimer deed, particularly because this was the second house they had purchased in this manner during the marriage.

¶14        Despite Wife's contention that Husband failed to refute her claim and disprove the asserted fraud, as the party seeking to invalidate the disclaimer deed, Wife had the burden to prove fraud by clear and convincing evidence. *See Powers*, 229 Ariz. at 562, ¶ 27. And the superior court was not obligated to find her testimony alone persuasive, particularly when Wife first raised the issue of fraud immediately before trial, inconsistent with her request in the dissolution petition that Husband keep the home and the home loan. *See Gutierrez*, 193 Ariz. at 347, ¶ 13. By declining to find fraud, the court necessarily found Wife's testimony insufficient to establish fraud, and on appeal, we do not reweigh conflicting evidence. *Id.*; *see also Hart v. Hart*, 220 Ariz. 183, 188, ¶ 18 (App. 2009) (noting that the superior court is presumed to apply the correct legal standard unless the record clearly shows otherwise).

¶15        Accordingly, we affirm the superior court's ruling that Husband held title to the marital home as his sole and separate property, subject to a community lien for community contributions.[1]

### B.    Amount of the Community Lien.

¶16        Wife further argues that the superior court erred in calculating the value of the community lien against the home. "The existence and the value of an equitable lien present mixed questions of fact and law." *Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010). While we defer to the superior court's factual findings unless clearly erroneous, we draw our own legal conclusions from those express or implicit findings. *Id.*

¶17        A separate property residence remains separate property even if the community contributes funds and uses the residence as a family home. *Drahos*, 149 Ariz. at 249. Arizona has long recognized, however, that capital contributions made with community funds create a community

---

[1]        Additionally, Wife argues that the superior court should have held Husband in contempt for selling the marital residence, purportedly in violation of the preliminary injunction. *See* A.R.S. § 25-315(A)(1)(a), (5). But the preliminary injunction only prohibited sale of "joint, common or community property," A.R.S. § 25-315(A)(1)(a). Because the marital residence was Husband's separate property, the injunction did not apply to it.

interest in the separate asset that may be vindicated through an equitable lien.  *See Lawson v. Ridgeway*, 72 Ariz. 253, 261–62 (1951).

**¶18**　　　Applied to real property, the amount of the lien will reflect not just the amount of community funds expended but also the increase in value attributable to the community contribution during the marriage.  *See Honnas v. Honnas*, 133 Ariz. 39, 41 (1982); *Lawson*, 72 Ariz. at 262.  Early appellate decisions held that the community lien should account for any increase in equity created by community-funded loan principal payments and capital improvements.  *See Lawson*, 72 Ariz. at 261; *Hanrahan v. Sims*, 20 Ariz. App. 313, 317 (App. 1973); *see also Barnett v. Jedynak*, 219 Ariz. 550, 554, ¶ 15 (App. 2009).  The community lien was later expanded to also include a proportional share of market-based appreciation.  *See Honnas*, 133 Ariz. at 40; *Drahos*, 149 Ariz. at 250.

**¶19**　　　Generally, the community's interest in appreciated separate property can be calculated using the *Drahos* formula: $C + \left[\frac{C}{B} \times A\right]$, where A = appreciation, B = purchase price, and C = community contributions to principal.  *See also Valento*, 225 Ariz. at 482, ¶¶ 14–16 (applying the logic underlying the *Drahos* formula to account for separate property that depreciates in value); *Barnett*, 219 Ariz. at 555, ¶ 21 (applying the *Drahos* formula when separate property appreciates both before and after the marriage begins).  The *Drahos* formula thus credits the community for its capital contributions, then divides any appreciation proportional to the respective contributions from separate and community property ($\frac{C}{B}$ representing the community's proportionate share).

**¶20**　　　But *Drahos* calculated the community lien on an asset acquired prior to marriage and on which *both* separate and community funds had been expended; because both separate and community funds were used, it made sense to divide the appreciation proportionally.  149 Ariz. at 249; *see also Honnas*, 133 Ariz. at 40 (describing the scope of the community lien as the share of enhanced value attributable to the community contribution); *cf. Cockrill v. Cockrill*, 124 Ariz. 50, 54 (1979) ("[P]rofits, which result from a combination of separate property and community labor, must be apportioned accordingly."); *Tester v. Tester*, 123 Ariz. 41, 44 (App. 1979) (noting that the measure of the community's share is the increase in value due to the community's contribution).

**¶21**　　　The *Drahos* formula has not been applied to circumstances such as those presented here: a separate property residence, purchased during marriage, paid for solely with community funds.  And we conclude

that under these circumstances—when an asset is purchased during the marriage and no separate funds have ever been expended on it—the *Drahos* formula should not apply. Instead, when the community pays all costs associated with purchasing and improving the separate property, any appreciation in value and the resulting increase in equity is fully attributable to the community, and the community is thus entitled to an equitable lien for the full increase in equity. This process gives effect to the residence's separate property classification: the spouse who holds title retains title to the property. But it also gives appropriate credit to the community for the community payments that were the sole driving force building equity in the separate asset.

¶22 Here, the superior court found the property's purchase price to be $235,000 and the sale price to be $284,999, yielding $49,999 in appreciation, with community contributions to principal totaling $13,272. And we defer to those factual findings.[2] *See Valento*, 225 Ariz. at 481, ¶ 11.

¶23 But because *only* community funds were used to purchase the separate property home, the court's reliance on *Drahos* to calculate a community lien in the amount of $16,095.78 was flawed. Instead, the

---

[2] Wife argues the superior court erred in valuing several variables in the *Drahos* formula. First, she suggests that the court should have used the initial amount of the home loan ($230,743) as the purchase price, but the court properly considered the down payment when determining the total purchase price ($235,000).

Next, Wife argues that the court improperly used the sale price ($284,999) rather than the amount of a pre-sale appraisal ($295,000) to determine the amount the property had appreciated in value. But absent evidence that the sale was something other than an arms-length transaction, the court reasonably relied on the sales price (rather than the estimate reflected in an appraisal) as better evidence of the actual value of the property (and thus the amount of appreciation in value).

Finally, Wife asserts that the superior court should have credited the community with over $33,000 in improvements to the residence. Community-funded improvements may be considered as contributions to principal, but only when those improvements "can be proven to have increased market value and thereby increased equity." *Valento*, 225 Ariz. at 482, ¶ 13 n.5. In any event, to the extent any of the expenditures increased the market value of the residence, Wife (through the community lien for the full increase in equity) has properly been credited for the community-funded improvements.

community was entitled to a lien for its full $13,272 contribution to principal plus the full $49,999 in appreciation, totaling $63,271.

**¶24** Accordingly, we reverse the superior court's valuation of the community lien and remand with direction that the dissolution decree instead reflect a $63,271 community lien, of which Wife's share is $31,635.50.

## II. Other Issues.

**¶25** Wife further argues that the superior court erred in determining the duration and amount of spousal maintenance and by denying her request for attorney's fees. Although we discern no error in the superior court's analysis, the ultimate resolution of those issues may be affected by our redetermination of the community lien against the marital home, and we thus remand for further consideration by the superior court.[3]

## III. Attorney's Fees on Appeal.

**¶26** Both Husband and Wife request attorney's fees on appeal under A.R.S. § 25-324, and Husband under A.R.S. § 12-349. Having considered the relevant factors and in an exercise of our discretion, we decline to award either party attorney's fees. We award Wife her costs on appeal upon compliance with ARCAP 21.

---

[3] Wife's appellate briefs also challenge the superior court's post-decree rulings denying her request for a new trial and awarding Husband attorney's fees. But Wife's notice of appeal specified only that she was appealing from the dissolution decree itself—"the judgements/orders entered on June 15, 2018"—not the post-decree rulings. *See* ARCAP 8(c)(3) (requiring a notice of appeal to "[d]esignate the judgment or portion of the judgment from which the party is appealing"); *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 599, ¶ 38 (App. 2007) ("[O]ur review on appeal is limited to the rulings specified in the notice of appeal."). Moreover, this court explicitly ordered "that if [Wife] wishes the ruling on the motion for new trial to be reviewed in this appeal, [Wife] must file a timely amended notice of appeal." Wife did not do so. Accordingly, we decline to address Wife's challenges to the post-decree rulings.

**CONCLUSION**

¶27 For the foregoing reasons, we affirm the decree in part but reverse the valuation of the community lien on the home and remand for further proceedings, as appropriate, consistent with this opinion.



AMY M. WOOD • Clerk of the Court
FILED: AA