NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JAVIER CUEVAS MENDOZA, *Petitioner/Appellee,*

*v.*

LILLIANA HERNANDEZ PEREZ, *Respondent/Appellant.*

No. 1 CA-CV 21-0394 FC
FILED 5-26-2022

Appeal from the Superior Court in Maricopa County
No. FC2020-051966
The Honorable Alison Bachus, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Pangerl Law Firm PLLC, Phoenix
By Regina M. Pangerl
*Counsel for Respondent/Appellant*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

**F U R U Y A**, Judge:

**¶1**             Lilliana Hernandez Perez ("Mother") appeals two parts of the superior court's dissolution decree, including the child support and division of tax exemption orders. For the following reasons, we vacate the court's 2017, 2018, and 2020 child support orders and remand to recalculate but otherwise affirm the decree.

## FACTS AND PROCEDURAL HISTORY

**¶2**             Javier Cuevas Mendoza ("Father") and Mother share one minor child (the "Child") who resides in California with Mother. The parties separated in 2016, and Father had another child from a separate relationship in 2018. Father petitioned the Maricopa County Superior Court to dissolve the marriage in June 2020.

**¶3**             Mother presented evidence of the Child's expenses at the dissolution trial in March 2021, including prior medical and orthodontic expenses. Father testified he would reimburse Mother for half of these expenses and half of agreed-upon extracurricular activities. Mother sought orders for retroactive and ongoing child support. Both parents earned less than minimum wage at all relevant times, and the court attributed a full-time minimum wage to both. *See* Ariz. Rev. Stat. ("A.R.S.") § 25-320(N). The court granted Mother's request for retroactive child support for a three-year period preceding Father's petition for dissolution. *See* A.R.S. § 25-320(C). The court calculated retroactive child support for 2017 and 2018 of $5,937.60 and ordered Father to pay $250 monthly towards his retroactive child support. However, the court ordered Father to pay $0 in child support from 2019 forward.

**¶4**             The court also ordered Father to pay half of the Child's ongoing medical, vision, orthodontic, and extracurricular expenses and to reimburse Mother for past expenses in the amount of $2,690.59. Finally, the court ordered that Mother and Father split the child-tax exemption in alternating years.

**¶5**             Following issuance of the dissolution decree, Mother moved to alter or amend the judgment under Arizona Rule of Family Law Procedure ("Rule") 83. The court denied Mother's Rule 83 motion. The court thereafter awarded Mother $2,500 in attorney's fees and stated that no further matters remained pending. Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## DISCUSSION

**¶6** In a proceeding for dissolution of marriage, the superior court may order either or both parents owing a duty of support to a child "to pay an amount reasonable and necessary for support of the child." *See* A.R.S. § 25-320(A). The legislature charged our supreme court with establishing "guidelines for determining the amount of child support" and "criteria for deviation from them on all relevant factors," including, in relevant part, the financial resources and needs of the child, the financial resources and needs of the custodial parent, and the financial resources and needs of the noncustodial parent. *See* A.R.S. § 25-320(D). To implement this directive, the supreme court established the Arizona Child Support Guidelines (the "Guidelines") in 2015, providing a framework to determine the amount of child support "consistent with the reasonable needs of children and the ability of parents to pay." *See* A.R.S. § 25-320(D); Guidelines § 1. The Guidelines were amended in 2018 and 2022. *Id.* Because the order at issue in this appeal was filed before the 2022 amendment became effective, the 2018 Guidelines control our analysis here. *Compare* A.O. 2018-08 (Jan. 24, 2018) (providing, in relevant part, that the 2018 Guidelines govern all child support orders "entered after March 31, 2018"), *with* A.O. 2021-131 (Aug. 16, 2021) (providing that the 2022 Guidelines govern all child support orders "entered on or after January 1, 2022").

**¶7** We review child support awards for an abuse of discretion. *Sherman v. Sherman*, 241 Ariz. 110, 112, ¶ 9 (App. 2016). The court abuses its discretion when it commits an error of law in reaching a discretionary conclusion or when the record is "devoid of competent evidence" to support the court's decision. *See Woyton v. Ward*, 247 Ariz. 529, 531, ¶ 5 (App. 2019) (internal citations omitted). We accept the court's factual findings unless clearly erroneous, but we review its conclusions of law and interpretation of the Guidelines de novo. *Sherman*, 241 Ariz. at 113, ¶ 9.

**¶8** Mother argues the superior court abused its discretion by ordering that Father pay no child support from 2019 onward. Mother argues the Guidelines required the court—after applying the self-support reserve test to reduce Father's gross income—to consider "the financial impact the reduction would have on [Mother]'s household." Guidelines § 15. The self-support reserve test is a tool used by the court to verify, after determining the child support order, that the paying parent is financially able to pay the child support and maintain a minimum standard of living, *Id.*, and provides a means for the court to account for "the financial resources and needs of the noncustodial parent" A.R.S. § 25-320(D)(2). The calculations used for this test have been modified through the years (*compare* Guidelines § 15 (2015), *with* Guidelines § 15 (2018)), but at the time the court issued its orders, the reserve was equal to 80% of the monthly full-

time earnings at Arizona's minimum wage. Guidelines § 15. If, after deducting the reserve amount from the paying parent's adjusted gross income, the resulting amount is less than the child support order, the court may reduce the paying parent's obligation. *Id.*

**¶9** Mother did not request, prior to the dissolution trial, that the court make separate findings of fact or conclusions of law. *See* Ariz. R. Fam. Law P. 82(a)(1). Therefore, "we assume that the court found every controverted fact necessary to sustain the judgment, and we will uphold such an implicit finding if supported by the record." *Femiano v. Maust*, 248 Ariz. 613, 616, ¶ 12 (App. 2020) (internal quotation marks omitted). The record reflects the court had all relevant financial information before it and correctly calculated ongoing child support. We presume, in particular, that the court considered the impact a reduction in Father's child support obligation would have on Mother's household. *See id.*

**¶10** Next, Mother argues the court erroneously applied the self-support reserve test retroactively because the Guidelines state it "applies only to the current child support obligation." Guidelines § 15. We disagree. Because no prior child support orders had been issued, the court applied the reserve test to the "current support obligation," which included three years of support awarded retroactively at Mother's request. *See* A.R.S. § 25-320(C).

**¶11** Our review of the record reveals that the 2018 child support worksheet miscalculated the self-support reserve test. Specifically, the 2018 worksheet did not use the full 80% credit amount for the reserve test required under the 2018 Guidelines, but instead applied a lesser credit amount. Using the correct percentage under the 2018 Guidelines would have resulted in a credit that exceeded the amount of child support provided. The result was that the worksheet used by the court errantly indicated a maximum child support amount of $326 rather than $0. While any reduction in child support resulting from this test is discretionary, we cannot say the court would still have ordered $310 in monthly child support for 2018 had the self-support reserve amount been properly calculated. *See* Guidelines § 15 ("If the resulting amount is less than the child support order, the court *may* reduce the current child support order . . . .").

**¶12** Further, the child support calculations for 2017 and 2020 in the dissolution decree do not state whether they incorporated a self-support reserve and the record lacks a child support worksheet for either of these years. As such, we cannot say whether the court's 2017 and 2020 child support orders were the result of discretion or another miscalculation.

4

Therefore, we vacate the 2017, 2018, and 2020 child support orders, and remand for the court to recalculate those three years. We note that upon remand, the court will be required to use the new 2022 Guidelines for these recalculations. We affirm the 2019 child support order, however, because the child support worksheet supports the court's calculations and demonstrates the court's exercise its of discretion.

**¶13** Finally, Mother argues the court abused its discretion and committed legal error by awarding Father an alternating tax exemption for the Child prospectively, despite not owing ongoing child support. Because Mother has not included supporting legal authority or citations to the record, we could deem this argument waived. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009); ARCAP 13(a)(7). We decline to do so, however, because the Guidelines clearly resolve this issue. *See id.* Unless otherwise agreed upon by the parties, the court shall allow "each parent to claim allowable federal dependency exemptions proportionate to adjusted gross income . . . ." Guidelines § 27. The court "*may* deny the right to present or future tax exemption when a history of non-payment of child support exists." *Id.* (emphasis added). On this record, we discern no abuse of discretion or legal error.

## CONCLUSION

**¶14** For the foregoing reasons, we vacate and remand the 2017, 2018, and 2020 child support orders, but affirm the 2019 child support order and division of child tax exemption.

